**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LLOYD BOSTON,                              :
                                          :     Civil Action No. 04-5921  (WHW)
                 Plaintiff,               :
                                          :
          v.                              :     **OPINION**
                                          :
NEW BRUNSWICK POLICE                       :
DEPARTMENT,                                :
                                          :
                 Defendant.               :

**APPEARANCES:**

Lloyd Boston, Plaintiff pro se
50 Finwick Street
Newark, NJ 04114

**WALLS**, District Judge

Plaintiff Lloyd Boston, a prisoner confined at Southern
State Correctional Facility at the time he submitted this
Complaint, seeks to bring this action in forma pauperis pursuant
to 42 U.S.C. § 1983, alleging violations of his constitutional
rights.  Based on his affidavit of indigence and the absence of
three qualifying dismissals within 28 U.S.C. § 1915(g), the Court
will grant Plaintiff's application to proceed in forma pauperis
pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court
to file the Complaint.[1]

---

[1] At the time Plaintiff submitted his Complaint, Plaintiff
had an institutional account balance of $0.00 and had had an
institutional account balance no higher than $0.00 for the

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he was apprehended by five police officers who beat him severely and then took him to the New Brunswick Police Department headquarters where they questioned him and refused him medical care.  Upon his release, he went to a hospital emergency room, where physicians determined that he suffered multiple fractures, back and neck injuries, a chipped tooth, and other cuts and bruises.  Plaintiff alleges that, in addition to these physical injuries, he now suffers from fear of police officers as well.  The only named defendant is the New Brunswick Police Department.

This Court construes the Complaint as attempting to allege a claim for excessive force in arrest in violation of the Fourth

_____

previous six months.  Accordingly, no initial fee will be assessed.  As Plaintiff is no longer a prisoner, no periodic fee payments will be ordered.  See 28 U.S.C. § 1915(b); In re Smith, 114 F.3d 1247 (D.C.Cir. 1997) (prisoner who is released during pendency of action covered by Prison Litigation Reform Act is responsible for those partial payments of filing fees that accrued prior to release).

Amendment and a claim for violation of the Due Process Clause,

for failure to provide appropriate medical care to an arrestee.

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time,

certain in forma pauperis and prisoner actions that are

frivolous, malicious, fail to state a claim, or seek monetary

relief from a defendant who is immune from such relief.  See 28

U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C.

§ 1915A (actions in which prisoner seeks redress from a

governmental defendant); 42 U.S.C. § 1997e (prisoner actions

brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the

Court must be mindful to construe it liberally in favor of the

plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United

States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must

"accept as true all of the allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them

in the light most favorable to the plaintiff."  Morse v. Lower

Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court

need not, however, credit a pro se plaintiff's "bald assertions"

or "legal conclusions."  Id.

A pro se complaint may be dismissed for failure to state a

claim only if it appears "'beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle

3

him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting

4

under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

IV.  ANALYSIS

A.  Excessive Force in Arrest

The Fourth Amendment to the United States Constitution
provides that "The right of the people to be secure in their
persons ... against unreasonable searches and seizures, shall not
be violated."

"To state a claim for excessive force as an unreasonable
seizure under the Fourth Amendment, a plaintiff must show that a
'seizure' occurred and that it was unreasonable."  Brower v.
County of Inyo, 489 U.S. 593, 599 (1989), quoted in Abraham v.
Raso, 183 F.3d 279, 288 (3d Cir. 1999).  See also Graham v.
Connor, 490 U.S. 386, 395 (1989) ("all claims that law
enforcement officers have used excessive force--deadly or not--in
the course of an arrest, investigatory stop, or other 'seizure'
of a free citizen should be analyzed under the Fourth Amendment
and its 'reasonableness' standard").

A seizure triggering Fourth Amendment protection occurs when
a government actor "by means of physical force or show of
authority, has in some way restrained the liberty of a citizen."
Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

5

To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983), quoted in Tennessee v. Garner, 471 U.S. 1, 8 (1985) and Graham v. Connor, 490 U.S. 386, 396 (1989). Proper application of this objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396; quoted in Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Ultimately, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397.[2]

---

[2] A police officer may be liable under section 1983 if the officer fails to intervene and take reasonable steps when an individual is subjected to excessive force at the hands of another officer, even if that officer is a superior. See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (citing Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986) (other citations omitted)). However, the officer must have a "realistic and reasonable opportunity to intervene." Id. at 651 (citing Clark, 783 F.2d at 1007 (instructing the district court upon remand to determine whether the officer was in a position to intervene)); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972) (liability for

The facts alleged by Plaintiff would be sufficient to state a claim for excessive force in arrest, had he named as a defendant anybody involved in the incident.  Local government units and supervisors, however, are not liable under § 1983 solely on a theory of <u>respondeat superior</u>.  See <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat superior</u>.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  <u>Accord Robinson v. City of Pittsburgh</u>, 120 F.3d 1286,

---

failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); <u>Putnam v. Gerloff</u>, 639 F.2d 415, 423-24 (8th Cir. 1981) (liability exists only if the non-intervening officer saw the beating or had time to reach the offending officer).

1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff
must show that an official who has the power to make policy is
responsible for either the affirmative proclamation of a policy
or acquiescence in a well-settled custom." Bielevicz v. Dubinon,
915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v.
Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516
U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v.
Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must
demonstrate that, through its deliberate conduct, the
municipality was the moving force behind the plaintiff's injury.
Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing]
> final authority to establish municipal policy with
> respect to the action issues a final proclamation,
> policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212
> (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati,
> 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452
> (1986) (plurality opinion)). A custom is an act "that
> has not been formally approved by an appropriate
> decisionmaker," but that is "so widespread as to have
> the force of law." [Bd. of County Comm'rs of Bryan
> County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]

> There are three situations where acts of a
> government employee may be deemed to be the result of a
> policy or custom of the governmental entity for whom
> the employee works, thereby rendering the entity liable
> under § 1983. The first is where "the appropriate
> officer or entity promulgates a generally applicable
> statement of policy and the subsequent act complained
> of is simply an implementation of that policy." The
> second occurs where "no rule has been announced as
> policy but federal law has been violated by an act of

the policymaker itself." Finally, a policy or custom
may also exist where "the policymaker has failed to act
affirmatively at all, [though] the need to take some
action to control the agents of the government 'is so
obvious, and the inadequacy of existing practice so
likely to result in the violation of constitutional
rights, that the policymaker can reasonably be said to
have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Nothing in the facts alleged by Plaintiff suggests an

official policy to use excessive force in arrest. Nor has

Plaintiff named as a defendant anybody involved in his arrest.

Accordingly, the Complaint fails to state a claim for excessive

force in arrest. Plaintiff will be granted leave, however, to

file an amended complaint.

B.    Due Process

A liberty interest protected by the Due Process Clause

may arise from either of two sources:  the Due Process Clause

itself or State law. See Hewitt v. Helms, 459 U.S. 460, 466

(1983); Asquith v. Department of Corrections, 186 F.3d 407, 409

(3d Cir. 1999).

Pre-trial detainees and convicted but unsentenced prisoners

retain liberty interests firmly grounded in the Due Process

Clause of the Fourteenth Amendment. See Hubbard v. Taylor, 399

F.3d 150  (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341

(3d Cir. 2000). Analysis of whether such a detainee or

unsentenced prisoner has been deprived of liberty without due

process is governed by the standards set out by the Supreme Court

9

in Bell v. Wolfish, 441 U.S. 520 (1979).  Hubbard, 399 F.3d at

157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions
> or restrictions of pretrial detention that implicate
> only the protection against deprivation of liberty
> without due process of law, we think that the proper
> inquiry is whether those conditions amount to
> punishment of the detainee.  For under the Due Process
> Clause, a detainee may not be punished prior to an
> adjudication of guilt in accordance with due process of
> law. ...

> Not every disability imposed during pretrial
> detention amounts to "punishment" in the constitutional
> sense, however.  Once the government has exercised its
> conceded authority to detain a person pending trial, it
> obviously is entitled to employ devices that are
> calculated to effectuate this detention. ...

> A court must decide whether the disability is
> imposed for the purpose of punishment or whether it is
> but an incident of some other legitimate governmental
> purpose.  Absent a showing of an expressed intent to
> punish on the part of detention facility officials,
> that determination generally will turn on "whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]."  Thus, if a
> particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment."  Conversely, if a restriction
> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees qua
> detainees.   ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

With respect to medical care and prison conditions, however, pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners. Bell v. Wolfish, 441 U.S. at 545; Hubbard, 399 F.3d at 165-66; Natale, 318 F.3d at 581-82; Kost v. Kozakiewicz, 1 F.3d 176, 187-88 (3d Cir. 1993). For the sake of convenience, the Court will analyze Plaintiff's due process medical-care claim under the Eighth Amendment standard.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable

11

claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in

itself indicate deliberate indifference. <u>Andrews v. Camden
County</u>, 95 F.Supp.2d 217, 228 (D.N.J. 2000); <u>Peterson v. Davis</u>,
551 F.Supp. 137, 145 (D. Md. 1982), <u>aff'd</u>, 729 F.2d 1453 (4th
Cir. 1984). Similarly, "mere disagreements over medical judgment
do not state Eighth Amendment claims." <u>White v. Napoleon</u>, 897
F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt
to second-guess the propriety or adequacy of a particular course
of treatment ... [which] remains a question of sound professional
judgment. Implicit in this deference to prison medical
authorities is the assumption that such informed judgment has, in
fact, been made." <u>Inmates of Allegheny County Jail v. Pierce</u>,
612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation
omitted). Even if a doctor's judgment concerning the proper
course of a prisoner's treatment ultimately is shown to be
mistaken, at most what would be proved is medical malpractice and
not an Eighth Amendment violation. <u>Estelle</u>, 429 U.S. at 105-06;
<u>White</u>, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for
medical treatment, however, and such denial exposes the inmate
'to undue suffering or the threat of tangible residual injury,'
deliberate indifference is manifest. Similarly, where 'knowledge
of the need for medical care [is accompanied by the] ...
intentional refusal to provide that care,' the deliberate
indifference standard has been met. ... Finally, deliberate

indifference is demonstrated '[w]hen ... prison authorities
prevent an inmate from receiving recommended treatment for
serious medical needs or deny access to a physician capable of
evaluating the need for such treatment." Monmouth County Corr.
Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted).
"Short of absolute denial, 'if necessary medical treatment [i]s
... delayed for non-medical reasons, a case of deliberate
indifference has been made out." Id. (citations omitted).
"Deliberate indifference is also evident where prison officials
erect arbitrary and burdensome procedures that 'result[] in
interminable delays and outright denials of medical care to
suffering inmates.'" Id. at 347 (citation omitted).

Here, Plaintiff has alleged facts suggesting both a serious
medical need and deliberate indifference by the persons who took
him to the police station and who controlled him while there.
These facts suggest that the failure to provide medical care was
"punishment" in violation of the Due Process Clause. As with
Plaintiff's excessive-force claim, however, Plaintiff has not
named as defendants the persons involved in the incident, and he
has not alleged facts suggesting the existence of a policy to
deprive arrestees of their due process right to adequate medical
care. Accordingly, the Complaint fails to state a due process
medical-care claim.

14

V.   CONCLUSION

For the reasons set forth above, the Complaint ordinarily
would be subject to dismissal, pursuant to 28 U.S.C.
§§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a
claim.  However, because it is conceivable that Plaintiff may be
able to supplement his pleading with facts sufficient to state a
claim for excessive force in arrest, the Court will grant
Plaintiff leave to file an amended complaint.[3]  An appropriate
order follows.

William H. Walls
United States District Judge

Dated: 11 July 2005

---

[3] Plaintiff should note that when an amended complaint is
filed, the original complaint no longer performs any function in
the case and "cannot be utilized to cure defects in the amended
[complaint], unless the relevant portion is specifically
incorporated in the new [complaint]."  6 Wright, Miller & Kane,
Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes
omitted).  An amended complaint may adopt some or all of the
allegations in the original complaint, but the identification of
the particular allegations to be adopted must be clear and
explicit.  Id.  To avoid confusion, the safer course is to file
an amended complaint that is complete in itself.  Id.

15